**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **BRIAN O'NEAL ELLIOTT,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **No. 3:17-cv-0250** |
| **v.** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **KEVIN GENOVESE, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**<u>MEMORANDUM</u>**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.

The petitioner is serving a sentence of 25-years' imprisonment, imposed by the Davidson County

Criminal Court on October 24, 2012, after the petitioner pleaded guilty to second-degree murder.

The respondent has filed an answer to the petition (ECF No. 16) stating that the petition should

be denied because the petitioner's claims are without merit and are procedurally barred.

The matter is ripe for review and the court has jurisdiction. 28 U.S.C. § 2241(d). The

respondent does not dispute that the petitioner's federal habeas petition is timely. (ECF No. 16

at Page ID# 1585.) The respondent states that the federal habeas petition at issue here appears to

be the petitioner's first application for federal habeas relief. (*Id.*)

Because a federal court must presume the correctness of a state court's factual findings

unless the petitioner rebuts this presumption with "clear and convincing evidence," 28 U.S.C. §

2254(e)(1), and because the issues presented can be resolved with reference to the state-court

record, the court finds that an evidentiary hearing is not necessary. *See Schriro v. Landrigan*,

550 U.S. 464, 474 (2007) (holding that if the record refutes a petitioner's factual allegations or

otherwise precludes habeas relief, the district court is not required to hold an evidentiary hearing (citing *Totten v. Merkle,* 137 F.3d 1172, 1176 (9th Cir. 1998))). Upon review and applying the AEDPA standards, the court finds that the petitioner is not entitled to relief on the grounds asserted. Accordingly, the petition will be denied and this matter, dismissed.

## I.  PROCEDURAL BACKGROUND

The state prosecution arose from the April 16, 2010 shooting death of Miguel Tobias in the front yard of his home. On February 4, 2011, the petitioner was indicted by the Davidson County grand jury and charged with one count of first-degree murder. (ECF No. 14-1 at Page ID # 52.) On August 20, 2012, the day that trial was scheduled to commence, the petitioner accepted the state's plea offer and pleaded guilty to second-degree murder with the trial court to determine the appropriate sentence at a sentencing hearing. (*Id.* at Page ID## 61-63.) Following a sentencing hearing on October 24, 2012, the trial court sentenced the petitioner to 25 years' imprisonment. (ECF No. 14-3 at Page ID## 99-161.)

The petitioner did not immediately appeal his sentence to the Tennessee Court of Criminal Appeals ("TCCA"). Rather, on February 28, 2013, the petitioner filed a *pro se* petition for post-conviction relief in the trial court. (ECF No. 14-14 at Page ID## 278-87.) The trial court appointed counsel, who filed an amended petition. (*Id.* at 301-03, 306-12.) Following an evidentiary hearing, all parties agreed that the petitioner was entitled to file a delayed appeal of his sentence, and the trial court held the post-conviction petition in abeyance pending a ruling on the petitioner's appeal. (ECF No. 14-15 at Page ID# 402-05.)

The petitioner filed his delayed notice of appeal on January 10, 2014. (ECF No. 14-1 at Page ID## 73-74.) On October 15, 2014, the TCCA issued an unpublished opinion denying relief and affirming the petitioner's sentence. (ECF No. 14-7 at Page ID## 207-10; *see also*

*State v. Brian Oneal Elliot*, No. M2014-00083-CCA-R3-CD; 2014 WL 5242610, at *1 (Tenn. Crim. App. Oct. 15, 2014) [*Elliot I*].) The petitioner filed an application for permission to appeal to the Tennessee Supreme Court ("TSC"), which was denied on January 15, 2015. (*Id.*)

On March 8, 2015, the petitioner filed a notice of his intent to rest on the proof adduced at the post-conviction evidentiary hearing. (ECF No. 14-14 at Page ID## 328-29.) On September 15, 2015, the trial court issued an order denying relief. (ECF No. 14-14 at Page ID## 330-42.)

The petitioner appealed to the TCCA, which denied relief on July 26, 2016. (ECF No. 14-15 at Page ID## 1558-62; *see also Brian ONeal Elliot v. State,* No. M2015-02000-CCA-R3-PC, 2016 WL 4039586, at *1 (Tenn. Crim. App. July. 26, 2016) [*Elliot II*].) The petitioner filed an application for permission to appeal to the TSC, which was denied on October 19, 2016. (ECF No. 14-24 at Page ID# 813.)

## II.  STATEMENT OF FACTS

The TCCA reiterated the facts the State set forth in establishing a factual basis for the petitioner's guilty plea:

> [O]n April 16th, 2010, the victim Miguel Tobias (phonetic) was on the porch of 3710 Ezell Road in Davidson County with another individual. It was mid afternoon, and a car approached the house and stopped. Mr. Tobias went to see what the individuals wanted. When he got close to the car, the front passenger rolled down the window and shot multiple times killing Mr. Tobias. The victim's wife was in the house and heard the shots as did the couple's three young children. The police responded and began their investigation. They learned the make, model, and partial plate number of the car. They later determined that it belonged to Trevarius (phonetic) Maples. As the investigation continued, the detective assigned to the murder learned that there had been a report of a rape at that location. Sex abuse detectives confirmed that the rape had been reported at that same location on or about April 12th . . . . The victim of that rape was fourteen-year old [P.E.]. After learning this information, the homicide detectives spoke with [P.E.] and her mother. [P.E.] told the detectives that on April 12th, 2010, she and a friend skipped school and went to 3710 Ezell Road where a

cousin of [P.E.'s] friend resided. While they were there [P.E.] was raped by a man. She reported the rape to the police immediately, and the police determined that the man who raped [P.E.] was Romel Roberto Guafarro (phonetic).

On April 16th, 2010, [P.E.'s] uncle, [the appellant], picked her up from middle school. Trevarius Maples was driving the vehicle. When [P.E.] got in the car, [the appellant] instructed her to show them where the rape occurred. They drove down Ezell Road, and [P.E.] pointed out the house at 3710 Ezell. They drove past the house, and [the appellant] then instructed Maples to stop the car. [The appellant] got out of the car and retrieved a gun. Maples then drove back to 3710 Ezell. When the car pulled up to the house, there were two men on the porch, one of which was the victim, Miguel Tobias. As Mr. Tobias was walking up to the car, [P.E.] cried out that he was not the man who had raped her. [The appellant] nonetheless rolled down the window and shot Tobias causing his death.

> I would note that if the case had gone to trial today the State would have severed the two defendants. Maples would have testified as [P.E.] would have testified, that [P.E.] clearly told [the appellant] the man was not her rapist before he was murdered. The proof would also show that the victim looked nothing like the rapist. The victim was an average height and weight whereas the rapist weighed over 250 pounds.

*Elliott I*, 2014 WL 5242610, at *1.

The TCCA then summarized the evidence presented at the sentencing hearing:

Damaris Santiago, the victim's wife, testified at the sentencing hearing that she and the victim had three children, whose ages were twelve, ten, and seven years. At the time of the shooting, she and the children were inside the house at 3710 Ezell Road. Mrs. Santiago heard two gunshots but did not think anything was wrong until one of the victim's friends came inside and told her to come outside. She walked outside and saw the victim lying on the ground.

Mrs. Santiago said that the victim was friendly, funny, and sweet and that he loved his children. After the victim's death, the children required therapy. Their ten-year-old son continued to have trouble in school and feared that he also might lose his mother.

Ernesto Castro, the victim's brother, testified that he lived in California. On Friday afternoon after the shooting, Mrs. Santiago called and informed him of the victim's death. Mr. Castro had eight brothers and sisters but was closest to the victim. He described the victim as honest and hard-working.

Stacy Walling, P.E.'s mother, testified that the appellant was P.E.'s paternal uncle. Walling acknowledged that she was testifying only because the State subpoenaed her. At the time of the shooting, P.E. was fifteen years old, and she

had a close relationship with the appellant. P.E. promptly disclosed the rape to her mother, who in turn reported it to the police. P.E. did not like to talk about the shooting; however, she eventually told Walling that she was present when it occurred. Walling said that P.E. was depressed because of the rape, that P.E. blamed herself for the appellant's being in jail, and that P.E. was in counseling.

Walling said that P.E. had been subpoenaed to testify at the appellant's trial. P.E. did not want to testify and indicated that "she would rather go to jail than [the appellant]." P.E. had cried after "certain people" pressured her not to testify against the appellant; however, Walling did not know who tried to intimidate P.E.

On cross-examination, Walling said that P.E. told her about the rape the day it happened. Afterward, Walling took P.E. to the hospital. Walling said that she thought the appellant knew about the rape, noting, "I'm sure everybody found out. It just spreads fast."

On redirect examination, Walling acknowledged that P.E. had said that she told the appellant just before he shot the victim that the victim was not the man who raped her.

On recross-examination, Walling stated that she did not know whether the appellant heard P.E.'s statement.

The thirty-four-year-old appellant testified that he wanted to apologize to the victim's family for his mistake. He said that he thought he was killing the man who had raped P.E. He did not recall P.E. saying the victim was not the rapist but did not deny that she could have made that statement; instead, he recalled her saying "that's them."

On cross-examination, the appellant said that Maples was driving the car. The appellant knew a gun was in the trunk of the car but could not recall who put it there. The appellant retrieved the gun before confronting the victim. He explained, "I was going into a situation where I didn't know if I was going to have to defend myself against whoever did this or not." The appellant denied that he intended to shoot and kill the person who raped his niece. He acknowledged that he did not say a word to the victim before shooting him, maintaining that he "lost control."

Ricky Waller, a community minister, testified that he had spoken with the appellant since the appellant's incarceration. Waller believed the appellant was remorseful and wanted to change his life.

Prior to imposing the sentence, the court explicitly considered the purposes and principles of the sentencing act and the facts and circumstances of the offense. The court noted that as a Range I, standard offender, the appellant was subject to a sentence of fifteen to twenty-five years for his Class A felony conviction. *See* Tenn.Code Ann. §§ 39–13–210(a); 40–35–112(a)(1). The court observed that the appellant had a prior history of criminal convictions, noting that he had one prior

felony conviction of aggravated assault and eight prior misdemeanor convictions. Tenn.Code Ann. § 40–35–114(1). The court further found that the appellant was leader in the commission of the offense. Tenn.Code Ann. § 40–35–114(2). The court also found that the appellant had failed to comply with the conditions of a sentence involving release into the community, as evidenced by at least two prior probation violations. Tenn.Code Ann. § 40–35–114(8). Finally, the court found that the appellant employed a firearm during the commission of the offense. Tenn.Code Ann. § 40–35–114(9). The court afforded the greatest weight to enhancement factors (1) and (9).

Regarding mitigation, the court noted the appellant's claim that he was provoked. Tenn.Code Ann. § 40–35–113(2). The court stated, however, that "[t]he problem is that there was no provocation on the part of this victim or anyone else there at the time." Accordingly, the court found that no mitigating factors were applicable and imposed a sentence of twenty[-]five years.

*Elliott I*, 2014 WL 5242610, at *2–3.

The TCCA summarized the evidence presented at the post-conviction hearing as

follows:

[T]he Petitioner testified that his father retained Counsel to represent him at trial. He testified that Counsel visited him in jail one time to discuss his case. The Petitioner received a plea offer from the State on the day of his trial, and he testified that Counsel informed him on that day that his sentence would be fifteen to twenty-five years for second degree murder, and that he would serve 30% of his sentence. When the trial court informed the Petitioner that he would serve his sentence at 100%, the Petitioner said he was not aware of that fact and asked for time to speak with Counsel about his sentence. The Petitioner testified that he felt he had no choice but to plead guilty because he was facing a fifty-one year sentence if his case proceeded to trial. However, the Petitioner then testified that if he had known he could stop the plea proceeding at any time, he would have done so because he felt "coerced" into pleading guilty by the fact that he could be found guilty at trial.

The Petitioner testified that, on the day of the plea, Counsel informed him that he would be eligible for parole after serving eight years. The Petitioner described Counsel as being "hung up" on the State's offer and thought Counsel was unprepared for trial. The Petitioner said he was not given ample opportunity to weigh the "pros and cons" of going to trial.

On cross-examination, the Petitioner stated that he would seek a trial if his plea was withdrawn. The Petitioner stated that Counsel did not discuss going to trial and that he felt like Counsel was not going to "fight for him" at trial and did not want to "chance it." The Petitioner told Counsel that the State's proposed

witnesses would not testify against him. Counsel told the Petitioner that his case was a "clear case" of manslaughter and told the Petitioner he would try to negotiate the best sentence possible for him.

The Petitioner stated that after learning that the State's offer had a release eligibility of 100% during the guilty plea hearing, the Petitioner talked about it with Counsel and decided to plead guilty because the Petitioner "didn't know what else to do." He said he was concerned about the possibility of a fifty-one-year sentence if convicted at trial. The Petitioner agreed that he understood everything the trial court said during the guilty plea hearing. The Petitioner agreed that he told the trial court that he had thoroughly discussed the case with Counsel. The Petitioner repeatedly testified that certain facts were not brought to light that would have changed his decision not to go to trial, but he was unable to articulate any specific facts.

Counsel testified that he had been licensed to practice law in Tennessee since 1956 and that 80% of his practice involved criminal cases. He agreed that he represented the Petitioner in this matter. Counsel agreed that he erroneously told the Petitioner that the State's offer to plead guilty to second degree murder had a 30% release eligibility. When Counsel and the Petitioner left the courtroom to discuss his error after it had been clarified by the trial court, Counsel made it clear to the Petitioner that he was wrong about the 30% release eligibility. He recalled that the trial court corrected him in open court as well.

Counsel stated that, "under the facts of the case," he advised the Petitioner to accept the State's plea bargain offer and, stated that, in hindsight, he would give him the same advice again in order to avoid a first degree murder conviction.

Counsel testified that he was prepared to go to trial and had discussed the case with the Petitioner, although he could not recall their specific discussions. Counsel was convinced that the Petitioner had a 90% chance of being convicted of first degree murder if he went to trial. Counsel had no indication that the proposed witnesses would not testify at trial as the Petitioner alleged. He testified that the Petitioner did not have a lot of time to consider the State's plea offer because it was made the morning of trial. He denied telling the Petitioner that he would receive the minimum sentence if he pleaded guilty and stated that he never guaranteed that the Petitioner would get a plea offer for manslaughter.

On cross-examination, Counsel agreed that a notice of appeal of the Petitioner's sentence was not filed in this case and that Counsel did not discuss filing one with the Petitioner. Counsel could not recall any of his discussions with the Petitioner about trial strategy and could not recall going over the facts of the case with the Petitioner, although he was confident he had done so. Counsel specifically recalled that there was no pressure on the Petitioner in terms of time as to whether

or not he should plead guilty after he learned of the 100% release eligibility
percentage.

*Elliott II*, 2016 WL 4039586, at \*2–3.

III.    <u>ISSUES PRESENTED FOR REVIEW</u>

In his *pro se* petition, the petitioner claims that his counsel was ineffective for:

1.  failing to adequately investigate the case and inform the petitioner of his purported
    trial strategy;

2.  failing to adequately represent the petitioner's interests at the sentencing hearing;

3.  failing to fully explain to the petitioner the nature and consequence of his plea;

4.  pressuring the petitioner into making a 'split second decision' to plead guilty;

5.  failing to give the petitioner adequate time to consider his option; and

6.  misleading the petitioner into thinking that he would be sentenced to the minimum
    fifteen-year sentence and would be eligible for parole after serving eight years.

(ECF No. 1 at Page ID# 23.)

IV.    <u>STANDARD OF REVIEW</u>

This matter is governed by the provisions of the Antiterrorism and Effective Death

Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA").  *See Penry v. Johnson*, 532 U.S.

782, 792 (2001).   AEDPA "dictates a highly deferential standard for evaluating state-court

rulings, which demands that state-court decisions be given the benefit of the doubt."  *Bell v.

Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Hardy v. Cross*, 565 U.S. 65, 66 (2011);

*Felkner v. Jackson*, 562 U.S. 594, 597 (2011).   "AEDPA requires heightened respect for state

court factual and legal determinations."  *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006).

"State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting

the presumption by clear and convincing evidence." *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). AEDPA prevents federal habeas "retrials" and "ensure[s] that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, this court may not rely on the decisions of lower federal courts. *Lopez v, Smith*, 135 S. Ct.1, 4 (2014); *Harris v. Stovall*, 212 F.3d 940, 943-44 (6th Cir. 2000). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 39 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Tennessee state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644-45 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *see Burt v. Titlow*, 134 S. Ct. 10, 16 (2013); *Metrish v. Lancaster*, 133 S. Ct. 1781, 1786 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Indeed. "habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 562 U.S. at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).

Under AEDPA, 28 U.S.C. § 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Ayala*, 135 S. Ct. at 2198; *see also White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (explaining that the Supreme Court, "time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.') (internal citation omitted).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in United States Supreme Court cases, or if it decides a case differently than the United States Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from United States Supreme Court decisions but

unreasonably applies it to the facts of the particular case. *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington*, 562 U.S. at 103)).

## V.    DISCUSSION

### A.  Ineffective Assistance of Counsel:  Legal Standard

The TCCA considered, and this court will consider, the petitioner's ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  In *Strickland*, the Supreme Court established a two-part test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d

130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Mirzayance*, 556 U.S. at 123); *see also Titlow*, 134 S. Ct. at 13; *Cullen*, 563 U.S. at 189; *Moore*, 562 U.S. at 122. In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Richter*, 562 U.S. at 101-02).

With these legal principles in mind, the court considers each of the petitioner's ineffective assistance of counsel claims.

### B.  Ineffective Assistance of Counsel:  TCCA Analysis

Relying on the *Strickland* standard, as set forth above, the TCCA considered, and rejected the petitioner's arguments as follows:

> The Petitioner contends on appeal that the post-conviction court erred when it denied his petition because he received the ineffective assistance of counsel and because his plea was involuntarily entered. The State responds that the record shows that his plea was voluntarily entered, based on his affirmation of his understanding of the plea during an extensive plea colloquy, and that Counsel's

representation of the Petitioner was effective as demonstrated by the favorable plea bargain that the Petitioner received. We agree with the State.

\* \* \*

We conclude that the post-conviction court did not err when it determined that the Petitioner had not proven by clear and convincing evidence that he had received the ineffective assistance of counsel. Counsel testified that he advised the Petitioner to take the State's plea bargain offer because it was highly likely that the Petitioner would be convicted of first degree murder if he went to trial.

The State had a strong case against the Petitioner, and Counsel testified that he expected the State's witnesses to testify at trial, further confirming his opinion that the Petitioner should accept the State's offer of second degree murder. After mistakenly informing the Petitioner of a 30% release eligibility, Counsel discussed the Petitioner's potential sentence with him and still advised him to plead guilty on the consideration that the Petitioner would receive half the sentence he would be eligible for if found guilty at trial. The Petitioner testified that he felt Counsel was ineffective because he did not bring out certain facts during investigation and because the Petitioner felt coerced to plead guilty based on the fact that he was facing fifty-one years if convicted. The Petitioner has not shown by clear and convincing evidence that he received the ineffective assistance of counsel based on Counsel's advising him to plead guilty, and the Petitioner has not articulated the facts that Counsel should have presented.

We also conclude that the Petitioner has not shown that his plea was entered involuntarily. At the guilty plea hearing, the Petitioner expressed his understanding of the implications of his decision to plead guilty and affirmed that he did not wish to proceed to trial which is evidence that the Petitioner was not coerced. The trial court asked him numerous times whether he had questions or concerns about his plea or his sentencing range and release eligibility percentage. The Petitioner had ample opportunity to express his discomfort with or misunderstanding of his guilty plea. The Petitioner has not proven by clear and convincing evidence that his plea was not entered knowingly and voluntarily, as he has not provided any evidence that shows that his plea was not voluntarily entered. Accordingly, we conclude that the Petitioner is not entitled to relief.

*Elliott II*, 2016 WL 4039586, at \*4–5.

### C. Ineffective Assistance of Counsel:  Analysis

#### 1.  Preliminary Statement

In his federal habeas petition, the petitioner raises six claims for relief.  As his first claim for relief, the petitioner argues that his counsel was ineffective for failing to adequately investigate the case and failing to inform the petitioner of his trial strategy.  While difficult to discern, it appears that, as part of this first claim for relief, the petitioner also argues that counsel was ineffective for failing to advise him that the statement his minor niece, who was present at the shooting, gave to police was inadmissible because it was obtained from her without a parent or attorney present.  The respondent suggests that the petitioner raises seven grounds for relief, that the issue of the petitioner's niece's statement is a seventh and separate claim, and that this seventh claim for relief is procedurally defaulted.  The court relies on the petitioner's presentation of his claims, considers the six claims petitioner raises and includes the issue regarding the petitioner's niece's statement as part of his first claim for relief.

Additionally, although the respondent contends that petitioner's claim regarding the inadmissibility of his niece's statement, trial counsel's representation of petitioner at the sentencing hearing and trial counsel's misleading the petitioner regarding the length of his sentence are procedurally defaulted, the court disregards the procedural default and considers the merits of those claims.  *See*  28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *see also Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ( recognizing that "[j]udicial economy might counsel giving the [other merits] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th

14

Cir. 2003) (noting that, where the procedural default issue raises more questions than the case on the merits, the court may assume without deciding that there was no procedural default or that the petitioner could show cause and prejudice for that default.)

### 2. Claims Considered on the Merits

#### a. Failure to Meaningfully Investigate and Interview Witnesses

Petitioner contends that trial counsel was ineffective for failing to adequately investigate the case and for failing to advise the petitioner about his trial strategy. Additionally, the petitioner contends that trial counsel was ineffective for failing to advise him that he "had a good chance of winning if he chose to go to trial" because his niece's statement to the police that she saw the petitioner shoot and kill the victim would not have been admissible at trial because she was questioned by the police without a parent or attorney present. (ECF No. 6 at Page ID# 26.) The respondent contends that this claim is procedurally defaulted and without merit.

Relying on *Strickland*, the state court analyzed this claim and concluded that counsel was not ineffective because the petitioner had failed to demonstrate by "clear and convincing evidence" the investigative facts that counsel should have presented, but did not. Additionally, the state court credited counsel's testimony at the state post-conviction evidentiary hearing that he had discussed the case with the petitioner, that he was prepared to go to trial and that he was convinced that the petitioner should accept the plea offer even with 100% release eligibility because, based on the strength of the state's evidence, trial counsel believed that the petitioner had a 90% chance of being convicted of first-degree murder if he went to trial. *See Elliott II*, 2016 WL 4039586, at * 3; *see also* ECF No. 14-20 at Page ID# 790.)

The petitioner does not offer any evidence, let alone clear and convincing evidence, to contradict the state court's factual findings accrediting trial counsel's testimony at the state post-

15

conviction evidentiary hearing that he had discussed the case with the petitioner and that he was fully prepared to go to trial if the petitioner did not accept the plea offer. (ECF No. 14-15 at Page ID## 393-94, 400.) Moreover, at the plea hearing, the petitioner testified that counsel had thoroughly discussed his case with him, that he had no questions about the nature of the plea deal, that he had no additional questions and that he was satisfied with counsel's work in the case. (ECF No. 14-2 at Page ID## 85-88.) The petitioner's representations at the guilty plea "constitute a formidable barrier in any subsequent collateral proceeding" because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The petitioner does not offer any evidence to suggest what additional investigation trial counsel should have done, but did not do, what evidence trial counsel should have obtained, but did not, and how such evidence would have impacted his case. *See Hutchison v. Bell*, 303 F.3d 720, 748 (6th Cir. 2002) (citing *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997) (holding that a petitioner cannot show deficient performance or prejudice resulting from a failure to investigate if the petitioner does not make some showing of what evidence counsel should have pursued and how such evidence would have been material.) What is more, at his plea hearing, the petitioner agreed that trial counsel did everything that the petitioner had asked him to do and did not fail to do anything he was asked to do. (ECF No. 14-2 at Page ID## 87-88.)

With respect to his contention that trial counsel was ineffective for failing to advise him that his niece's statement to the police would have been inadmissible at trial because the police questioned her without a parent or attorney present, the petitioner does not set forth any legal authority to support this contention, nor does he suggest what legal authority gives him standing to argue that the police questioning of his minor niece violated her rights, thereby rendering her

16

statements inadmissible. *See e.g. United States v. Nobles*, 422 U.S. 225, 234 (1975) (recognizing that "the Fifth Amendment privilege against compulsory self-incrimination, being personal to the defendant, does not extend to the testimony or statements of third parties called as witnesses at trial.")

In any event, the TCCA has long held that even the admissibility of a juvenile's confession is not dependent upon the presence of his or her parents or an attorney at the interrogation. *See State v. Rushing*, No. M2003-00101-CCA-R3CD, 2004 WL 784869, at *8 (Tenn. Crim. App. Apr. 12, 2004) (citing cases). Indeed, the presence of a parent or counsel is but one consideration that the state court will consider when determining the admissibility of a juvenile's confession, and the TCCA has held that "no single factor [including the presence of an interested adult] . . . should by itself render a confession unconstitutional absent coercive police activity." *State v. Carroll*, 36 S.W.3d 854, 864 (Tenn. Crim. App. 1999) (citing *State v. Callahan*, 979 S.W.2d 577, 583 (Tenn. 1998). Thus, while there may be factors courts must consider in determining the admissibility of a minor witness's statements, there is no support for the petitioner's contention that his teenage niece's statement would have been inadmissible just because the police questioned her without a parent or attorney present. Accordingly, trial counsel cannot have been ineffective on this basis and the petitioner is not entitled to relief.

> b. Failure to Adequately Represent the Petitioner's Interest at the Sentencing Hearing

The petitioner contends that his trial counsel was ineffective because he failed to represent the petitioner's interest at the sentencing hearing. Respondent contends that this claim is procedurally defaulted and that even if it were not, it is without merit.

The petitioner agreed to plead guilty to second-degree murder with the trial court determining a sentence between 15 and 25 years. At the sentencing hearing, trial counsel presented witnesses on the petitioner's behalf, including the petitioner, and effectively cross-examined the state's witnesses. For example, under trial counsel's questioning, the petitioner's minor niece's mother conceded that she did not know whether the petitioner heard his niece say that the victim was not the man who raped her. (ECF No. 14-3 at Page ID# 129.) Additionally, the petitioner's counsel successfully argued that there was only one victim of the offense and that the personal injuries resulting from the offense were an essential element of the offense, thereby defeating the state's argument that the petitioner's sentence should be enhanced because his niece was also a victim and had suffered personal injuries as a result of the offense. Moreover, although it was rejected by the trial court, the petitioner's counsel argued in mitigation that the petitioner was suffering from distorted thinking as a result of the rape of his niece, with whom the petitioner was close. (Id. at Page ID# 153.) Ultimately, the state court sentenced the petitioner to twenty-five years, a sentence within the range to which he had agreed. (*Id.* at Page ID# 158.)

Supreme Court "precedents . . . establish that there exists a right to counsel during sentencing in both noncapital and capital cases." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012) (internal citations omitted). The Court has long held that, "[e]ven though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in *Strickland* prejudice because "any amount of [additional] jail time has Sixth Amendment significance." *Id.* (citing *Glover v. United States*, 531 U.S. 198, 203 (2001).)

The petitioner does not specify what he believes trial counsel failed to do at the sentencing hearing to represent his interests, nor does he suggest anything that counsel could

have done differently at the hearing.  Moreover, petitioner does not suggest how anything counsel did or did not do at the sentencing hearing would have changed the outcome of the proceedings.  Accordingly, the petitioner is not entitled to relief on this claim.

### c.  Ineffective Assistance Related to the Petitioner's Guilty Plea

The petitioner contends that trial counsel was ineffective in a variety of ways in connection with his guilty plea.  Because these claims are interrelated and based on the same core set of facts, the court considers them together.  The petitioner claims that his trial counsel was ineffective for failing to fully explain the nature and consequence of his plea, for pressuring him into making a "split second decision" to plead guilty, for failing to give the petitioner adequate time to consider his options and for misleading the petitioner into thinking that he would be sentenced to the minimum fifteen-year sentence and would be eligible for release after serving eight years.  The respondent argues that these claims are procedurally defaulted or meritless or both.

On August 20, 2012, the trial court held a plea hearing.  (ECF No. 14-2.)  At the hearing the trial court began by explaining to petitioner that the case was set for trial that morning, but that because the petitioner had signed a petition to enter a guilty plea, the court would be conducting a plea hearing instead.  (*Id.* at Page ID#81.)  The trial court explained that as part of the plea agreement, the court would be deciding the petitioner's sentence, and the sentence would be within the range of 15 to 25 years.  (*Id.*)  The trial court emphasized that, regardless of sentence length, the petitioner would be serving the sentence at 100%.  (*Id.*)  When the trial court asked the petitioner if he understood this, the petitioner spoke up and explained that he did not understand the court's statement and sought time to speak with counsel to clarify the situation.  (*Id.*)  Trial counsel explained that he had inadvertently mislead the petitioner into thinking that

19

he would serve his sentence at 30%. (*Id.* at Page ID## 81-82.) Trial counsel admitted that he

had made a mistake. (*Id.* at Page ID# 82.) The petitioner and trial counsel went into a back

room and discussed whether the petitioner should still take the state's plea offer despite the

100% release eligibility. (*Id.*) The petitioner does not dispute these facts. (ECF No. 14-15 at

Page ID# 373.) After the petitioner and trial counsel returned, the trial court resumed the

standard plea colloquy asking the petitioner:

> THE COURT: Did [trial counsel] explain to you what you were charged with and the range of punishment versus what you're pleading guilty to and that range of punishment?

> MR. ELLIOTT: Yes, ma'am.

> THE COURT: Do you also understand that since we're going to be having a sentencing hearing for me to determine the length of the punishment that you're going to be waiving any issue about pleading guilty? But if I were to arrive at the sentence that you disagreed with, then you could appeal that. You could still appeal the sentence. Do you understand that?

> MR. ELLIOTT: Yes, ma'am.

> THE COURT: Okay. Now, have you thoroughly discussed everything about your case with [trial counsel]? And by that I mean have you gone over all the discovery in this case, any defenses you might have if you had any, or any witnesses that you might call to trial. I just want to make sure you've thoroughly discussed your case with him.

> MR. ELLIOTT: Yes, ma'am.

> THE COURT: Do you understand he's been discussing this case with the State's attorney even up until this morning and they've worked out this plea agreement on your behalf?

> MR. ELLIOTT: Yes , ma'am.

> THE COURT: Now, how far did you go in school, Mr. Elliott?

> MR. ELLIOTT: I graduated.

> THE COURT: Okay. So you do read?

MR. ELLIOTT: Yes, ma'am.

THE COURT: Did you read this petition [to enter plea of guilty] yourself or did [trial counsel] read it to you or did you kind of read it together?

MR. ELLIOTT: We read it together.

THE COURT: Okay. Did you have questions as you went over this petition?

MR. ELLIOTT: We -- we got

THE COURT: I just want to make sure all your questions have been answered to your satisfaction.

MR. ELLIOTT: Yes, ma'am.

THE COURT: Okay. Is there anything you need to ask me?

MR. ELLIOTT: No, ma'am.

THE COURT: Okay. Are you taking any medication today?

MR. ELLIOTT: No, ma'am.

THE COURT: Are you having any difficulty understanding what you're doing?

MR. ELLIOTT: No, ma'am.

THE COURT: Do you understand, Mr. Elliott, you do not have to plead guilty?

MR. ELLIOTT: Yes, ma'am.

THE COURT: You have a right to go to trial. We were set to go to trial this morning. You can do that if you want to, but you are giving that right up as part of this plea. Do you understand that?

MR. ELLIOTT: Yes, ma'am.

THE COURT: Is anybody forcing you to do this or promising you anything other than what we've talked about?

> MR. ELLIOTT: No, ma'am.

> THE COURT: Have you been satisfied with the work [trial counsel] has done on your case?

> MR. ELLIOTT: Yes, ma'am.

> THE COURT: Now, has he done everything that you've wanted him to do?

> MR. ELLIOTT: Yes, ma'am.

> THE COURT: Can you think of anything you asked him to do that he has not done?

> MR. ELLIOTT: No, ma'am.

(ECF No. 14-2 at Page ID## 85-90.)  At the end of the plea hearing, the trial court accepted the petitioner's guilty plea and set the matter for a sentencing hearing.  (*Id.* at Page ID#95-96.)

At the post-conviction hearing, the petitioner testified that he understood he was charged with first-degree murder which, if convicted, would have resulted in an automatic life sentence, that the only plea offer he received was on the day of trial, and that his trial counsel came to the holding cell where the petitioner was awaiting trial and explained the state's plea offer which would allow the petitioner to plead guilty to second-degree murder.  (ECF No. 14-15 at Page ID## 356-57.)  The petitioner testified that counsel suggested that, if the petitioner accepted the plea offer, the petitioner would get the minimum sentence and would serve his sentence at 30% and that if the petitioner did not accept the plea offer and went to trial, the petitioner would possibly serve 51 years.  (*Id.* at Page ID# 357.)  The petitioner testified that, when the trial court explained that he would serve whatever sentence the court determined at 100%, he "asked for time to speak with [trial counsel] to see what his take was on it."  (*Id.* at 359.)  After the petitioner and counsel discussed the plea offer, the plea proceedings continued.  The petitioner

testified that he took the plea offer because he felt he had no choice because if he did not take the plea and went to trial he would possibly serve 51 years. (*Id.* at Page ID# 360.) But the petitioner testified that, if he knew he could have stopped the proceeding at that time, he would not have accepted the plea and, instead, would have gone to trial. (*Id.*) The petitioner testified that he felt coerced into accepting the plea because if he did not, and he went to trial and lost, he would be facing a sentence of at least 51 years. (*Id.*) The petitioner testified that trial counsel told him that, if he accepted the plea, he would be eligible for parole in eight years. (*Id.* at Page ID# 361.) Finally the petitioner testified that he felt like the plea deal was "sprung on" him at the least second and that he did not have ample time to consider it. (*Id.* at Page ID# 363.)

On cross-examination, the petitioner admitted that the only plea offer he ever received was on the morning of trial, that he learned at the plea hearing that he would serve 100% and not 30% as his trial counsel had advised him earlier that morning, that he and his trial counsel left the courtroom and discussed the situation and, when the petitioner returned to the courtroom, he pleaded guilty. (*Id.* at Page ID## 370. 373-74.)

Trial counsel testified at the post-conviction hearing that the state did not make any plea offers prior to the offer made on the morning of trial, that he had mistakenly told the petitioner that he would serve time at 30%, that counsel made clear to the petitioner that he had been wrong about the petitioner's release eligibility, that he and the petitioner discussed what to do under these changed circumstances and that the trial court had cleared up any confusion regarding the petitioner's release eligibility in open court. (*Id.* at Page ID# 392-93.) Trial counsel testified that he was prepared to go to trial if the petitioner did not accept the plea offer. (*Id.* at Page ID# 393.) Trial counsel admitted that the petitioner did not have "a whole lot of time" to consider the state's offer but that they did discuss it, and counsel believed that the petitioner understood the

situation.  (*Id.* at Page ID# 396.)  Trial counsel explained that the petitioner did not have a lot of time to consider the state's offer because the offer was presented the morning of trial.  (*Id.*)  Finally, trial counsel testified that, while he did not remember how long he and the petitioner discussed whether the petitioner should accept the state's plea offer even with the 100% release eligibility, he did not feel there was any pressure on them to hurry.  (ECF No. 14-15 at Page ID## 396, 400.)  Rather, he stated "I had all the time that I wanted."  (*Id.* at Page ID# 400.)

The TCCA found that trial counsel was not ineffective for advising the petitioner to plead guilty.  *Elliott II*, 2016 WL 4039586, at * 5.

In the context of a guilty plea, the second element of the *Strickland* test is slightly modified.  In such a case, the petitioner must demonstrate there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  As in other contexts, in a guilty plea context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694).  A reviewing court owes significant deference to a state court's prejudice determination due to "the uncertainty inherent in plea negotiations."  *Moore*, 562 U.S. at 117.

In the Sixth Circuit, a petitioner cannot establish prejudice "merely by telling [the court] now that [he] would have gone to trial then if [he] had gotten different advice."  *Pilla v. United States*, 668 F.3d 368, 373 (6th Cir. 2012).  "The test is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'"  *Id*. (quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).  Further, a claim of ineffective assistance of counsel based on allegedly misleading information from counsel regarding the terms of a plea agreement never

constitutes an "extraordinary circumstance" warranting relief when the trial court has conducted a proper, clear, and thorough plea colloquy. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999).

## Nature and Consequences of Plea

The petitioner does not specify exactly what he did not understand about his guilty plea. However, even if he had identified specific issue(s) regarding his plea, as noted above, the petitioner's representations at the guilty plea hearing "constitute a formidable barrier in any subsequent collateral proceeding," because "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74.

At the plea colloquy, the petitioner conceded that: (1) he read the petition to enter a guilty plea with counsel; (2) counsel answered all his question regarding the petition; (3) he understood what he was doing and that he did not have to plead guilty; (4) he had no questions for the trial court; (5) he was not being forced to plead guilty and was not promised anything other than what was agreed to in the petition to plead guilty; (6) he was satisfied with his counsel, who had done everything that the petitioner asked him to do and did not fail to do anything requested by the petitioner; (7) he wanted to plead guilty and was doing so freely and voluntarily; (8) he heard the district attorney's recitation of the factual predicate for his plea and he admitted that he shot the victim; and (9) he understood that he was pleading guilty to second-degree murder and the trial court would conduct a sentencing hearing to determine the appropriate sentence within the range of 15 to 25 years, which the petitioner would be required to serve at 100%. (ECF No. 14-2 at Page ID## 85-88.)

The trial court conducted a thorough plea colloquy, ensuring that the petitioner understood the nature and consequences of his plea. The petitioner has failed to offer any evidence to demonstrate that trial counsel was ineffective for failing to ensure that he had a full

understanding of the nature and consequence of pleading guilty. The petitioner is not entitled to relief on this claim.

### Pressuring the Petitioner to Make a "Split Second" Decision to Plead Guilty and Failing to Give the Petitioner Adequate Time to Consider his Options

Although the petitioner does not specify, these two claims appear to relate to the amount of time that he had to consider the state's plea offer. At the post-conviction hearing both the petitioner and his trial counsel testified that the state presented only one plea offer, which was presented on the morning of trial. (ECF No. 14-15 at Page ID## 356-57, 370, 373-74, 393, 396.) Both also testified that the petitioner and trial counsel went over the plea offer together. (*Id.* at Page ID# 396.) Trial counsel explained that, although the petitioner did not have "a whole lot of time" to consider the plea, the reason for that was the late presentation of the offer and not anything that counsel or the petitioner could control. (*Id.*; *see also id.* at Page ID# 400.) The petitioner conceded that he did not have any unanswered questions regarding the plea offer and that he decided to plead guilty because the alternative was to go to trial, possibly lose and be sentenced to an automatic life sentence, which his counsel explained, would require the petitioner to serve at least 51 years. (*Id.* at Page ID# 360.) Additionally, trial counsel testified that he was prepared to go to trial if the petitioner did not accept the plea. (*Id.* at Page ID# 393.)

The testimony at the post-conviction hearing makes clear that the timing pressure, to the extent it existed, was the result of the plea offer being presented the morning of trial, and not as the result of anything trial counsel did or did not do. Trial counsel had no power to control the timing of an offer. As petitioner was made aware, if he did not already know, the state had no obligation to offer any plea deal at all and was solely in control of whether and when an offer would be made. (*See* ECF No. 14-15 at Page ID# 371 (the state's attorney explaining that the

26

state was not obligated to make an offer, his trial counsel cannot make the state present an offer and his trial counsel could not control the terms of the offer.)  The petitioner fails to offer any evidence to suggest that trial counsel pressured him into pleading guilty or failed to allow the petitioner adequate time to consider the plea offer.  Moreover, although the petitioner stated at the post-conviction hearing that if he were to do it over again, he would not have pleaded guilty. (ECF No. 14-15 at Page ID# 360.)  This bald statement without more is insufficient to persuade the court that deciding to reject the plea offer "would have been rational under the circumstances."  *Pilla*, 668 F.3d at 373.

### Misleading the Petitioner Into Thinking that He Would Receive a 15-year Sentence and Would be Eligible for Parole After Serving 8 years

The record makes clear that, when the petitioner entered the courtroom for the plea hearing, he was not aware that he would serve his sentence at 100%.  (ECF No. 14-15 at Page ID## 357-58, 383-84.)  However, the petitioner conceded at the post-conviction hearing that, by the time he and trial counsel returned to the courtroom, after leaving to discuss whether the petitioner should still pleaded guilty despite the 100% release eligibility, and certainly by the time he accepted the plea in open court, the petitioner was aware that his sentence would be served at 100%.  (*Id.* at 383-84.)  Moreover, by the time he pleaded guilty, the petitioner was well aware that he would be sentenced within the range of 15 to 25 years, that the trial court would select the appropriate sentence after a hearing and that he would be required to serve whatever sentence the trial court selected at 100%.  (ECF No. 14-2 at Page ID ## 81-90.)  The petitioner fails to offer any evidence to contradict these facts.

Based on the foregoing, the petitioner is not entitled to relief on any of the ineffective assistance claims he raises that are related to his guilty plea.

# VI    CONCLUSION

For the foregoing reasons, the habeas corpus petition will be denied and this matter, dismissed with prejudice.

The court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. The petitioner may not take an appeal unless a district court judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is made when the petitioner demonstrates that "'reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different matter or that the issues presented were "adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).)

In this case, the issues raised in the petition do not merit further review. Thus, the court will deny a COA. The petitioner may, however, seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

An appropriate order is filed herewith.

ENTER this 29th day of November 2017.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE